**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew McNutt,<br><br>              Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>              Defendant. | No. CV10-2612-PHX-DGC<br><br>**ORDER** |

Plaintiff Matthew McNutt filed an application for supplemental security income under the Social Security Act on January 29, 2007, claiming to be disabled as of June 1, 2004. Tr. 9, 65. The Social Security Administration ["the Administration"] denied Mr. McNutt's application on June 28, 2007, and, after reconsideration, on October 1, 2007. *Id.* Administrative Law Judge ("ALJ") Joan G. Knight held a hearing on June 22, 2009. Tr. 22-55. Judge Knight issued a written decision on October 22, 2009, finding that Mr. McNutt was not disabled within the meaning of the Social Security Act. Tr. 9-18. This decision became Defendant's final decision when the Appeals Council denied review. Tr. 1-3. Mr. McNutt commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1.

**I.      Standard of Review.**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The

Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.*

**II.   Analysis.**

Determining whether a claimant is disabled involves a five-step sequential evaluation. The claimant bears the burden in steps one through four. To establish disability the claimant must show (1) he is not currently working, (2) he has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. At step five, the Commissioner bears the burden of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(iv); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines[.]" *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999)).

The ALJ found that Mr. McNutt had not engaged in work since June 1, 2004, due to lumbar degenerative disc disease and other medical issues amounting to a severe impairment. Tr. 11. She also found that while Mr. McNutt did not suffer from a listed impairment under Social Security regulations, his physical limitations rendered him unable to perform past relevant work. Tr. 11, 16. The ALJ concluded, however, that Mr. McNutt was "not disabled" because he was able to perform other work and his "statements concerning the intensity, persistence and limiting effects of [his] symptoms" were not credible. Tr. 13-14.

Mr. McNutt argues that the Commissioner did not meet its burden of showing that

Mr. McNutt was capable of performing other work, and that the ALJ committed legal error because she did not properly weigh Mr. McNutt's subjective complaints and did not properly weigh medical source opinion evidence – failing to give controlling weight to the opinion of Mr. McNutt's treating physician.  Doc. 17 at 15,  20.  For the reasons that follow, the Court will reverse the ALJ's decision and remand for an award of benefits.

### A.     Plaintiff's Subjective Complaints.

The Administration must consider a claimant's symptoms, including pain, when making a disability determination.  *See* 20 C.R.F. § 404.1529.  "Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)).  "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (same); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Mr. McNutt testified that he suffers from back pain, depression, and occasional migraine headaches that produce nausea lasting 1-2 days and that his symptoms have prevented him from performing any work since the onset of his impairments in 2004. Tr. 13. He testified that he is unable to sit or stand for more than twenty minutes at a time (average) or for more than two hours total of an eight hour workday. *Id.* He also testified that he is unable to lift or carry less than 30 pounds, that back pain and insomnia limit his sleep to a maximum of five hours per night, that he must take a two hour nap each day, and that when he does sleep, he experiences increased pain due to being in one position. *Id.*

The ALJ evaluated Mr. McNutt's testimony using the two-step analysis established by the Ninth Circuit. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Applying the test of *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), she determined that Mr. McNutt's medically determinable impairments could reasonably produce his alleged symptoms. Tr. 13. Given this conclusion, and because she found no evidence of malingering, the ALJ was required to present "specific, clear and convincing reasons" for finding Mr. McNutt's testimony not credible. *See Smolen*, 80 F.3d at 1281; *Vertigan v. Halter*, 260 F. 3d 1044, 1049 (9th Cir. 2001) ("absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons.").

Mr. McNutt argues that the ALJ used a flawed credibility analysis and that she consequently failed adequately to consider Mr. McNutt's subjective symptoms or to compare Mr. McNutt's RFC with the requirements of competitive work for eight hours a day, five days a week, on a sustained basis. Doc. 17 at 20.

### 1. Credibility Analysis.

"The ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between her testimony and her conduct, claimant's daily

activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light*, 119 F.3d at 792); *see Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995). The ALJ may reject testimony based on daily activities where he makes specific findings that those activities are transferrable to the work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, a claimant "does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan*, 260 F.3d at 1050 (quoting *Fair*, 885 F.2d at 603); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (a claimant need not "vegetate in a dark room" to be eligible for benefits).

The ALJ found that Mr. McNutt's allegations that he could not work were inconsistent with his daily activities, which included "preparing meals, doing laundry, driving, playing guitar, reading, shopping and participating in family activities," and, "[p]erhaps most significantly," caring for his two young children, one with autism. Tr. 14. The ALJ also noted that Mr. McNutt would forgo his two hour nap on days his son was at home. *Id.* While recognizing that his pain imposed "significant restrictions," the ALJ concluded that Mr. McNutt's activities were "inconsistent with totally debilitating levels of pain." *Id.* The ALJ also gave weight to the opinions of Mark Strickland, Psy. D., a consulting examiner who performed a psychiatric evaluation on Mr. McNutt and found that his psychiatric condition would not prevent him from completing normal workdays/workweeks, and Ernest Griffith, M.D., a medical consultant who reviewed Mr. McNutt's records and performed an RFC assessment that concluded, in relevant part, that Mr. McNutt would be able to lift or carry up to 20 pounds, sit for a total of 6 hours of an 8 hour workday with the need to shift position every 30 minutes, and stand or walk for up to 6 hours of an 8 hour workday. *Id.* at 15.

### a. Daily Activities.

Mr. McNutt argues that the ALJ committed legal error by using his daily activities

to discredit his testimony about his incapacity because his daily activities were limited. Doc. 17 at 19. Mr. McNutt argues on the basis of *Vertigan* that a claimant may be able to perform a variety of routine tasks but still be disabled if such tasks do not account for a substantial part of his day. *Id.* at 18 (citing 260 F. 3d at 1050). In *Vertigan*, the court found that a claimant's ability to do grocery shopping with assistance, drive, walk for an hour in the mall, play cards, swim, watch television, read, and exercise did not discredit her disability claim because these activities did not constitute a substantial part of her day, nor was she required to be "utterly incapacitated." 260 F. 3d at 1050. The court also found that the claimant's physical activities were not necessarily transferable to the work setting and that activities one might do for therapeutic reasons do not show that that person could concentrate on sustained work, despite pain, over longer periods of time. *Id.*

As an initial matter, the Court finds that the ALJ applied the wrong standard when she stated that Mr. McNutt's daily activities were inconsistent with a showing of "totally disabling levels of pain." The Court also agrees that the ALJ's credibility assessment on the basis of Mr. McNutt's daily activities was flawed. First, the facts on the record do not support a finding that the physical activities Mr. McNutt reported took up a substantial portion of his day. *See Vertigan*, 260 F.3d at 149 (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F. 3d 595, 600 (9th Cir. 1999) (to discredit allegations of disability, claimant must spend a substantial portion of the day on activities transferable to the work environment)). During his hearing, Mr. McNutt testified that he would help his children get ready each morning and then bring them to school or their bus stop and later pick them up. Tr. 35. Mr. McNutt also testified that during the day he would clean up in the kitchen and around the house and then nap before getting his children. Tr. 40. Mr. McNutt testified that he took naps for a couple of hours each day because his symptoms prevented him from getting adequate sleep at night. Tr. 32. Mr. McNutt also testified that he had good days and bad days, with bad days lasting for four or five days at a time,

before he would "feel pretty good" and "could do a lot more." Tr. 34. Mr. McNutt testified that some days – about once a week or once every two weeks – he had to rely on his mother, who lived nearby, to drive his kids to school. Tr. 35. Mr. McNutt's testimony that he would forgo naps when his son was home relates to the period of time before his son started school, and Mr. McNutt testified that he would frequently "push off" his need for a nap but would also call his mother for help at times when she was available. Tr. 41. These facts, taken as a whole, do not suggest that physical activities made up a substantial part of Mr. McNutt's day. Additionally, the ALJ gave no analysis, other than her own summary conclusion, of how Mr. McNutt's daily activities conflicted with his account of his pain and physical limitations; nor did she make specific findings of how those activities transferred to the requirements of the work environment. The Court finds the ALJ did not provide clear and convincing evidence for rejecting Mr. McNutt's subjective complaints.

Defendant makes two arguments to support that the ALJ properly discredited Mr. McNutt's subjective complaints. Doc. 20 at 9-10. The Court finds both unpersuasive. Defendant first points out that Mr. McNutt stated at the hearing that he thought he could work and that he had applied to jobs after having back surgery in April, 2009. Doc. 20 at 9. Defendant argues that Mr. McNutt's willingness to work is inconsistent with his claim of disability. *Id.* As Mr. McNutt points out in his reply, however, this surgery occurred only two months prior to Mr. McNutt's hearing and – even with some improvement in his physical condition – Mr. McNutt's ability to sustain consistent work was still in question. Doc. 21 at 2. The Court finds that Mr. McNutt's willingness to seek work after a recent surgery is not a convincing basis for rejecting his subjective complaints over the relevant time period. Additionally, the results of Mr. McNutt's surgery and his willingness to seek work do not appear in the ALJ's written basis for her determination. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (The Court may not "affirm the ALJ's

credibility decision based on evidence the ALJ did not discuss.").

Defendant also cites to *Bray v. Astrue*, 554 F. 3d 1219, 1227 (9th Cir. 2009), to show that a claimant's active lifestyle can be a reason for an ALJ to discredit the claimant's subjective complaints. Doc. 20 at 9. In *Bray* the ALJ based his finding on five factors, including the claimant's active lifestyle and other factors not present here, such as claimant's recent work activity and her conflicting statements about her symptoms to an evaluating physician. 554 F. 3d at1227. The Court does not find *Bray* applicable to the facts in this case.

       **b.**   **Testimony from Physicians.**

Defendant argues that the ALJ properly relied on Dr. Strickland's report to find that Mr. McNutt's subjective complaints were not credible. Doc. 20 at 10. Mr. McNutt argues in response that Dr. Strickland is a psychiatrist and he offered opinions related to Mr. McNutt's depression, not his "physical impairments, symptoms or limitations." The Court agrees. Dr. Strickland's report notes only that Mr. McNutt would not be impaired from completing a normal workday/workweek "due to his psychiatric condition." Tr. 323. It also acknowledges that Mr. McNutt's psychiatric status is related to his physical capacity and that his work capacity may be limited until his physical condition improves. Tr. 323. Dr. Strickland's report does not specifically address Mr. McNutt's physical condition other than to report Mr. McNutt's own description of his back issues, sleeplessness, and his pain associated with sitting, standing or lying down. Tr. 328. Dr. Strickland's report does not provide a clear and convincing basis for rejecting Mr. McNutt's complaints.

The ALJ also appears to use Dr. Griffith's RFC assessment as a basis for discrediting Mr. McNutt's subjective complaints because, in contrast to her credibility analysis of Mr. McNutt, she notes that Dr. Griffith's opinion is "corroborated by the claimant's own descriptions and testimony concerning his activities of daily living, including his child care activity." Tr. 15. Other than making this statement affirming –

generally – the credibility of Dr. Griffith's RFC, Judge Knight does not "state specifically which [of Mr. McNutt's] symptom testimony is not credible and what facts in the record lead to that conclusion." *See Smolen*, 80 F. 3d at 1284.

The Court concludes that the ALJ failed to state clear and convincing reasons for discrediting Mr. McNutt's subjective symptom testimony. *See id.* at 1285.

### 2. Failure to Consider Plaintiff's Subjective Complaints.

Mr. McNutt argues that, having discredited his subjective complaints, the ALJ failed to consider them adequately in her disability assessment and she failed to compare his RFC to the requirements of sustained work 8 hours a day, 5 days a week. Doc. 17 at 20. The record shows that the ALJ asked the vocational expert "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity" and that the vocational expert concluded that someone in Mr. McNutt's condition would be able to work as a cashier or quality control inspector – jobs that exist in significant numbers. Tr. 17. Mr. McNutt argues, however, that on the basis of Mr. McNutt's own testimony of his symptoms, the vocational expert testified that there were no jobs in the national economy that he could perform. Doc. 17 at 20. The transcript shows that Mr. McNutt's attorney specifically asked about Mr. McNutt's ability to perform jobs in light of his need to take naps at unpredictable times in the day or his inability to complete tasks once a week or every other week. Tr. 49-50. It is clear from the absence of any discussion of this in her report that the ALJ gave no consideration to the vocational expert's opinion on the basis of these symptoms. Without clear and convincing reasons for rejecting Mr. McNutt's subjective complaints, the Court finds that the ALJ committed legal error in failing to consider them in her determination that Mr. McNutt was capable of work.

### B. Medical Source Opinion Evidence – Treating Physician.

The opinion of a claimant's treating physician is "entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849

1 F.2d 418, 421 (9th Cir. 1988)).  "The rationale for giving the treating physician's opinion
2 special weight is that he is employed to cure and has a greater opportunity to know and
3 observe the patient as an individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir.
4 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  An ALJ may reject
5 "the treating physician's opinion, but only by setting forth 'specific, legitimate reasons for
6 doing so, and this decision must itself be based on substantial evidence.'" *Rodriguez*, 876
7 F.2d at 762 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (1986)).  The ALJ can meet
8 this burden "by setting out a detailed and thorough summary of the facts and conflicting
9 clinical evidence, stating his interpretation thereof, and making findings." *Reddick v.*
10 *Chatter*, 157 F.3d 715, 725 (9th Cir. 1998).

11 Mr. McNutt argues that the ALJ committed legal error because she failed to give
12 controlling weight to the opinion of his treating doctor, Jonathan C. Landsman, M.D., as
13 conveyed by Michelle Hitchcock, P.A.-C.  Doc. 17 at 20.  The ALJ summarized the
14 contents of Dr. Hitchcock's report as follows,

> Dr. Hitchcock opined that the claimant could sit less than 1 hour at a time, stand/walk less than one hour at a time and would need an opportunity to alternate sitting and standing at will throughout the day.  In addition, the claimant could lift/carry 0-5 pounds frequently, 6-20 pounds occasionally, occasionally climb, balance and reach overhead but never stoop, kneel, crouch or crawl.  She also stated that the claimant's pain was moderate which constituted a significant handicap with sustained attention and concentration which would eliminate skilled work tasks.

20 Tr. 16.  The ALJ stated that she declined to give weight to this opinion because its
21 finding "that the claimant could frequently lift/carry only 5 pounds, had specified
22 postural limitations and significant handicap with concentration/attention is contradicted
23 by the claimant's activities of daily living including his child care activities." *Id.*
24 Defendant argues that the ALJ properly gave little weight to this opinion because she
25 gave specific and legitimate reasons for doing so and her own finding of Mr. McNutt's
26 RFC was supported by substantial evidence.  Doc. 20 at 11-12.

27 The Court does not agree that the ALJ set forth specific and legitimate reasons for

failing to give weight to Dr. Hitchcock's opinion. The ALJ stated, in conclusory fashion, that Dr. Hitchcock's findings regarding Mr. McNutt's lifting capacity, postural limitations, and handicap in concentration/attention due to moderate pain was contradicted by his daily activities, including childcare, but she did not specify which activities contradicted which findings. *See* Tr. 16.[1]

The Court also finds that Dr. Griffith's opinion does not provide substantial evidence to support the ALJ's weighting decision. Defendant correctly notes that the conflicting opinion of a non-examining medical expert can provide substantial evidence for rejecting the opinion of a treating physician if it is supported by independent evidence. Doc. 20 at 11 (citing *Tonapetyan v. Halter*, 242 F. 3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.")). Defendant argues that the conflicting opinion of Dr. Griffith, to whom the ALJ gave significant weight, was corroborated by Mr. McNutt's daily activities. Doc. 20 at 11. As stated earlier, however, the ALJ's discussion of Dr. Griffith's opinion states, without elaboration, only that Dr. Griffith's opinion is consistent with Mr. McNutt's daily activities – a finding that is no less conclusory than the ALJ's statement that Dr. Hitchock's opinion is not. Additionally, Mr. McNutt argues, correctly, that, to the extent that both doctors' conclusions about Mr. McNutt's functional capacity were based on the same clinical findings, Dr. Griffith's conclusions as a non-examining physician do not meet the threshold for calling into question the conclusions of a treating physician. Doc. 21 at 7. Mr. McNutt notes that

---

[1] The ALJ also stated that she accepted the part of Dr. Hitchock's opinion that Mr. McNutt had to alternate between sitting and standing because this finding was "corroborated by other evidence in the record including Dr. Griffith's opinion and the claimant's own testimony." *Id.* The ALJ does not explain, however, how Mr. McNutt's testimony supports this finding and not the others. Additionally, as discussed earlier in this order, the ALJ's discussion of Dr. Griffith's opinion is, itself, conclusory.

- 11 -

under Ninth Circuit precedent even the conclusions of an examining physician do not provide "substantial evidence" against those of a treating physician on the basis of the same clinical findings. *Id.* (citing *Orn v. Astrue*, 495 F. 3d 625, 632 (9th Cir. 2007) ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'")). It is not clear from Dr. Griffith's report which records he considered in making his RFC assessment, but the report cites to no new clinical findings, nor does the ALJ reference any, that would provide substantial evidence to call into question Dr. Hitchcock's conclusions. *See* Tr. 334-41. The Court finds that the ALJ committed legal error when she declined to give significant weight to Dr. Hitchcock's opinion.

**III.   Remedy.**

Mr. McNutt argues that the Court should remand for an award of benefits because his improperly rejected testimony, if credited as true, establishes disability. Doc. 17 at 24.[2] Mr. McNutt argues, in the alternative, that the Court should remand for further proceedings because the ALJ did not resolve inconsistencies on the record between the vocational expert's testimony and the dictionary of occupational titles ("DOT"). *Id.* at 25.

The decision to remand for further development of the record or for an award of benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held that an action should be remanded for an award of benefits where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the

---

[2] Although Mr. McNutt also argued that the ALJ improperly rejected the opinion of his treating physician, Mr. McNutt does not argue that this opinion, taken as true, would establish his disability, so the Court will not address this issue.

- 12 -

rejected evidence credited as true. *See, e.g.*, *Varney v. Sec'y of HHS*, 859 F.2d 1396, 1400 (9th Cir. 1988); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Reddick*, 157 F.3d at 729; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 926 (9th Cir. 2002); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Benecke v. Barnhart*, 379 F.3d 587, 593-95 (9th Cir. 2004); *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007); *Lingenfelter v. Astrue*, --- F.3d. ---, No. 04-56934, 2007 WL 2874403, at *10 (9th Cir. Oct. 4, 2007) ("[W]e will not remand for further proceedings where, taking the claimant's testimony as true, the ALJ would clearly be required to award benefits[.]") (citing *Varney*).

The Court has found that the ALJ did not provide clear and convincing evidence for rejecting Mr. McNutt's subjective complaints. The Court also finds, based on the previously noted testimony of the vocational expert (Tr. 49), that Mr. McNutt's subjective complaints, taken as true, show that he is unable to perform work. Neither party has alleged outstanding factual issues that must be resolved before making this determination. Because it is clear that the ALJ would be required to find Mr. McNutt disabled if his improperly-rejected evidence is credited as true, the Court will remand the case for an award of benefits. *See Smolen*, 80 F.3d at 1292 (remanding for an award of benefits where "the ALJ's reasons for discrediting Smolen's subjective symptom testimony, the physician's opinions, and the lay testimony were legally insufficient"); *Orn*, 495 F.3d at 640 (remanding for benefits where the opinions of treating physicians and the plaintiff's own testimony established disability); *Frederick v. Astrue*, No. 08-6094-TC, 2009 WL 3294891, at *3 (D. Or. Oct. 13, 2009) (remanding for benefits where holding down a full time job would not be possible for someone who needs pain-related rest after limited activity).[3]

---

[3] Given this ruling, the Court need not address Mr. McNutt's argument that the ALJ failed to resolve discrepancies between the vocational expert's testimony and the DOT.

- 13 -

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.

2. This case is **remanded** for an award of benefits.

Dated this 11th day of January, 2012.

_____
David G. Campbell
United States District Judge